SLR:LDM:WJG

**CV 13 - 5567**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**BRODIE, J.**

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA,

                         Plaintiff,

               - against -

FOUR HUNDRED SEVENTEEN THOUSAND,
ONE HUNDRED FORTY-THREE DOLLARS
AND FORTY-EIGHT CENTS ($417,143.48),
MORE OR LESS, IN UNITED STATES
CURRENCY SEIZED FROM J.P. MORGAN
CHASE BANK ACCOUNT NUMBER 4462287420
HELD IN THE NAMES OF AMELIA DE
CARMEN DOMINGUEZ AND GUSTAVO JULIA,
AND ALL PROCEEDS TRACEABLE THERETO;
AND

FIVE HUNDRED SIXTY-EIGHT DOLLARS AND
SEVENTY-ONE CENTS ($568.71), MORE OR
LESS, IN UNITED STATES CURRENCY SEIZED
FROM J.P. MORGAN CHASE ACCOUNT
NUMBER 4462287933 HELD IN THE NAME OF
GG GOLD, INC., AND ALL PROCEEDS
TRACEABLE THERETO.

                    Defendants In Rem.

VERIFIED COMPLAINT
IN REM

Civil Action No.

**GOLD, M.J.**

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

## INTRODUCTION

          Plaintiff United States of America, by its attorney, LORETTA E. LYNCH, United States Attorney for the Eastern District of New York, William J. Gullotta, Assistant United States Attorney, of counsel, alleges the following upon information and belief:

## PRELIMINARY STATEMENT

1. This is a civil action in rem to forfeit and condemn to the use and benefit of the United States the above-captioned defendant funds, and all proceeds traceable thereto, (the "Defendant Funds"), pursuant to (a) 21 U.S.C. § 881(a)(6), as monies furnished or intended to be furnished in exchange for a controlled substance, proceeds traceable to such an exchange and/or monies used or intended to be used to facilitate a violation of the Controlled Substances Act ("CSA"), 21 U.S.C. §§ 841 et seq., and (b) 18 U.S.C. § 981(a)(1)(A), as property involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1956(a)(2)(A). The Defendant Funds were seized from bank accounts that financed an aircraft used by the account holders solely to transport cocaine. Indeed, Gustavo Adolfo Julia Noceti ("Gustavo"), one of the account holders, along with others, was arrested, convicted, and sentenced to approximately twelve years in prison in Spain after he used the aircraft to fly approximately one ton of cocaine from Argentina to Spain. Gustavo is associated with both of the accounts that contained the Defendant Funds prior to the seizure in this matter.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1345 and 1355.

3. Venue lies in the Eastern District of New York pursuant to 28 U.S.C. §§ 1355 and 1395, in that the Defendant Funds were found and seized in the Eastern District of New York.

## THE DEFENDANTS IN REM

4. The Defendant Funds consist of approximately $417,143.48 and $568.71,

in United States currency, which was seized by U.S. Immigration and Customs Enforcement ("ICE") agents assigned to the El Dorado Task Force (the "EDTF") on or about January 18, 2011.

## STATUTORY BACKGROUND

5. Pursuant to 21 U.S.C. § 881(a)(6), all moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished in exchange for a controlled substance or listed chemical in violation of the CSA, all proceeds traceable to such an exchange, and all monies, negotiable instruments, and securities used or intended to be used to facilitate any violation thereof, are subject to forfeiture to the United States.

6. Pursuant to 18 U.S.C. § 981(a)(1)(A), any property, real or personal, involved in a financial transaction or attempted financial transaction in violation of 18 U.S.C. § 1956(a)(2)(A), is subject to forfeiture to the United States.

7. Pursuant to 18 U.S.C. § 1956(a)(2)(A), it is a crime to transport, transmit, or transfer, or attempt to transport, transmit, or transfer a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States, with the intent to promote the carrying on of a "specified unlawful activity." "Specified unlawful activity" is defined under 18 U.S.C. § 1956 to include violations of the CSA.

8. Pursuant to 18 U.S.C. § 984(a)(1), in "any civil forfeiture action in rem in which the subject property is cash [or] funds deposited in an account in a financial institution it shall not be necessary for the Government to identify the specific property involved in the offense that is the basis for the forfeiture; and it shall not be a defense that the property involved in such an offense has been removed and replaced by identical property." "[A]ny identifiable

property found in the same place or account as the property involved in the offense that is the basis for the forfeiture shall be subject to forfeiture under this section."

## NARCOTICS TRAFFICKING

9. Narcotics traffickers amass large cash proceeds from the sale of narcotics in the United States and elsewhere. The traffickers, or those associated with the traffickers, frequently attempt to give the impression of legitimacy to these profits; i.e., to "launder" them by making the profits appear to have been generated by a legitimate source. The traffickers must also devise various methods to use those narcotics proceeds to promote their narcotics activity by paying the expenses of their illegal activities including remitting payment for the wholesale purchase of narcotics, the transportation of narcotics, and other costs associated with the distribution of narcotics.

10. In order to accomplish these goals, narcotics traffickers frequently utilize domestic and foreign banks and/or financial institutions in order to make their narcotics proceeds appear to be from legitimate sources and to move those proceeds through the financial system.

11. These efforts frequently utilize "shell corporations" or businesses that purport to be legitimate businesses, but which in actuality have no assets, employees, or legitimate purpose.

12. It is also common as part of the laundering process to include wire transfers of funds to and from accounts held in countries that have political and economic stability, but which also have lax anti-money laundering rules, such as the Cayman Islands, Curacao, St. Lucia, and the Netherlands Antilles, and other similar countries.

4

## FACTS

13. On January 2, 2011, Spanish authorities detained a Challenger 604 private jet bearing tail number N600AM ("N600AM") at Barcelona International Airport. Spanish authorities discovered approximately 944 kilograms of cocaine on board. Eduardo Antonio Julia Noceti ("Eduardo"), Gustavo, and Gaston Matias Miret ("Miret") were aboard the aircraft. All are citizens of Argentina. All three men were arrested. Thereafter, Eduardo and Gustavo were each convicted and sentenced to in excess of ten years in prison.

14. Eduardo and Gustavo are brothers. Their father, Jose Julia, was head of the Argentine Air Force under the administration of Carlos Menem, President of Argentina from 1989 to 1999. The Julia family is wealthy, well-known, and influential in Argentine politics and business. Gustavo is a former finance manager for an Argentine government agency called Programa de Atención Médica Integral ("PAMI"), which is a public health insurance agency.

15. Miret is the son of Jose Miret, who was the Secretary of Planning during a previous Argentine administration.

16. In December 2010, the N600AM was stored for approximately one month at Moron Airport in Moron, Argentina. This airport is operated primarily by the Argentine Air Force, although there is some civilian use of the airport.

17. On December 30, 2010, N600AM departed Moron Airport and travelled to Ezeiza International Airport in Buenos Aires, Argentina. N600AM remained there for approximately two days. On January 1, 2011, N600AM departed Buenos Aires for Cape Verde before landing at Barcelona International Airport in Barcelona, Spain on January 2, 2011, at which time the 944 kilograms of cocaine was discovered and seized.

18. A query of U.S. Federal Aviation Administration records show that N600AM is registered to a company called 604 Jet LLC ("604 Jet"), which is located at 1535 Southeast 17th Street #B2, Fort Lauderdale, Florida.

19. Initially, Gustavo and Eduardo attempted to lease N600AM from 604 Jet through a company located in Florida called GG Gold, Inc. ("GG Gold"). GG Gold was incorporated on June 26, 2009. However, when it was discovered that GG Gold had been dissolved as a Florida corporation for failure to file an annual report, 604 Jet declined the lease. Shortly thereafter, Gustavo and Eduardo incorporated a company called Delaware GG, Inc. ("Delaware GG"), for the purpose of leasing N600AM.

20. 604 Jet and Delaware GG entered into a lease for N600AM on November 5, 2010 (the "Lease"), through a broker, Jet Lease of Palm Beach, Inc.

21. Pursuant to the Lease, Delaware GG agreed to pay 604 Jet approximately $400,000 as a security deposit and $253,500 every three months for the use of N600AM. Accordingly, the initial deposit would total approximately $653,500. Delaware GG also agreed to pay 604 Jet approximately $11,000 per month for maintenance. The term of the Lease was one year. The purported reason for leasing N600AM was for a VIP transit project Gustavo and Eduardo had in Spain, as well as a flower and export service. However, the investigation revealed that the N600AM was used solely by Gustavo and Eduardo to transport large quantities of cocaine internationally.

22. Prior to signing the Lease with 604 Jet, Gustavo and Eduardo made arrangements to wire transfer approximately $50,000 to Jet Lease of Palm Beach Inc.'s bank account. The purpose of the transfer was to demonstrate their intent to proceed with the lease.

6

Subsequently, funds were wire transferred on behalf of Gustavo and Eduardo to Jet Lease of Palm Beach Inc., who held the funds in an escrow account.

23. According to a Jet Lease of Palm Beach Inc. employee who has knowledge of the Lease, the company elected to negotiate a higher than normal security deposit for the lease of N600AM because Gustavo and Eduardo's background could not be established.

24. The employee further stated that N600AM was leased to Gustavo and Eduardo with the standard seating configuration. It did not contain any medical equipment and was not arranged for medical transport as the name "Medical Jet," one of the identified operators of N600AM, would seem to imply.

25. Further inquiries revealed that Eduardo attended pilot training in the United States. He attended Flight Safety International ("Flight Safety") from October 4, 2010, to October 23, 2010. The course was entitled, "Challenger 604 Initial Pilot Training" and was taught in Arizona. Flight Safety is located at the Marine Air Terminal, LaGuardia Airport, Flushing, New York.

26. A company called Southern Valley Trading Limited ("Southern Valley") wire transferred $34,000 to Flight Safety on October 5, 2010, for Eduardo's training; however, the wire transfer document referenced Gustavo's name, not Eduardo's. The wire transfer originated from First Caribbean International Bank in the Netherlands Antilles. Additional wire activity related to Southern Valley revealed that it also maintained, and conducted wire transfers from, an account at Bank of Saint Lucia International. No public information could be found on Southern Valley and the nature of the business could not be established.

7

## JP MORGAN CHASE ACCOUNT NUMBER 4462287933

27. JP Morgan Chase account number 4462287933 was established in Miami, Florida and is held in the name of GG Gold, Inc. ("Defendant Account 7933"). Gustavo is a signatory for this account.

28. On or about November 1, 2010, $400,000 was wire transferred from Defendant Account 7933 to Jet Lease of Palm Beach, Inc.

29. On or about November 2, 2010, at the request of a third-party, $253,500 was wire transferred from an Uruguayan business to Defendant Account 7933.

30. On or about November 2, 2010, Defendant Account 7933 wire transferred $253,500 to Jet Lease of Palm Beach, Inc. On the same date, another wire transfer from Defendant Account 7933 for $36,825.61 was transmitted to Jet Lease of Palm Beach, Inc.

31. On or about November 5, 2010, Jet Lease Palm Beach, Inc. sent a wire transfer in the amount of $664,825.61 to 604 Jet LLC, as payment in accordance with the Lease; $253,500 represented the quarterly lease from November 5, 2010 through February 4, 2011, $400,000 represented the security deposit; $36,825.61 represented the insurance expense; $25,000 was deducted for a commission expense.

32. On or about December 8, 2010, the Defendant Account 7933 wire transferred $11,016.23 directly to 604 Jet LLC. The payment detail of that wire indicated that it was for N600AM.

## JP MORGAN CHASE BANK ACCOUNT NUMBER 4462287420

33. JP Morgan Chase account number 4462287420 ("Defendant Account 7420") is held in the names of Amelia De Carmen Dominguez (the "Claimant") and Gustavo,

8

who are married. This is a personal account and as such was not used for business transactions.

34. Bank records show that this account was funded by two wires: one sent on September 24, 2010, from Southern Valley's First Caribbean International Bank located in the Netherlands Antilles, and another in the amount of $409,000 sent from Defendant Account 7933 on January 11, 2011, fewer than ten days after Gustavo's arrest and the seizure of the cocaine.

35. As discussed above, on January 2, 2011, Spanish authorities seized N600AM after 944 kilograms of cocaine was discovered aboard the aircraft chartered and flown by pilots Eduardo and Miret. Gustavo accompanied them.

36. During the investigation, the Claimant admitted that after Gustavo was arrested he sent instructions to the Claimant to transfer the balance of Defendant Account 7933 out of the United States to Argentina. On January 5, 2011, in an effort to comply with Gustavo's instructions, $409,000 was wire transferred from Defendant Account 7933 to an account at Administradora De Fondos De Inversiones Sur ("Afisur"), which is an investment and financial advisory firm that is located in South America. On January 7, 2011, this wire transfer was rejected and returned to Defendant Account 7933.

37. On or about January 11, 2011, Claimant wire transferred $409,000 from Defendant Account 7933 to Defendant Account 7420, a personal bank account held in the name of the Claimant and Gustavo. Subsequently, Gustavo was convicted in Spain and was sentenced to 13 years imprisonment.

38. A further review of the bank records indicates that 169 East Dupont Building #1620, Miami, Florida 33131 is the mailing address for Defendant Accounts 7933 and 7420.

39. Gustavo and Eduardo are in the international cocaine trafficking business and were convicted of transporting over 944 kilograms of cocaine. Defendant Account 7933 was used to lease N600AM, which Gustavo and Eduardo used to transport cocaine, and Defendant Account 7420 was funded by a transfer from Defendant Account 7933 following Gustavo's and Eduardo's arrests for cocaine trafficking. As such, the Defendant Funds are subject to forfeiture because they are proceeds of controlled substances offenses and/or were intended to be used to facilitate controlled substances offenses, in violation of 18 U.S.C. § 881(a)(6). The Defendant Funds are also subject to forfeiture, pursuant to 18 U.S.C. § 1956(a)(2)(A), because they were transmitted or transferred from a place outside the United States to a place in the United states with the intent to promote the carrying on of a specified unlawful activity.

## THE SEIZURE WARRANT

40. On January 18, 2011, the Honorable Andrew L. Carter, Jr., then-United States Magistrate Judge in the Eastern District of New York, found that probable cause existed to believe that the Defendant Funds were subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(A), and issued seizure warrants for all funds on deposit in Defendant Accounts 7933 and 7420, pursuant to 21 U.S.C. § 881(b) and 18 U.S.C. 981(b).

41. On or about January 18, 2011, law enforcement officers executed the seizure warrants issued by Magistrate Judge Carter, which resulted in the seizure of the Defendant Funds.

## FIRST CLAIM FOR RELIEF

42. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 40 above as if set forth fully herein.

43. The Defendant Funds constitute or are derived from moneys furnished or intended to be furnished in exchange for a controlled substance, proceeds traceable to such an exchange and/or moneys used or intended to be used to facilitate a violation of the CSA, 21 U.S.C. §§ 841 et seq.

44. The Defendant Funds were found in the same place as the moneys used to facilitate the violations of the CSA.

45. As a result of the foregoing, the Defendant Funds are liable to condemnation and forfeiture to the United States in accordance with 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 984.

### SECOND CLAIM FOR RELIEF

46. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 40 above as if set forth fully herein.

47. The Defendant Funds constitute and/or are derived from property involved in a transaction or attempted transaction, in violation of 18 U.S.C. § 1956(a)(2)(A), or property traceable to such property.

48. The Defendant Funds were found in the same place as the moneys used to promote the carrying on of a specified unlawful activity.

49. By reason of the foregoing, the Defendant Funds are liable to condemnation and forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(A) and 18 U.S.C. § 984.

WHEREFORE, plaintiff requests that a warrant of this Court be issued for the arrest of the Defendant Funds; that notice of these proceedings be given to all interested persons;

that the Defendant Funds be forfeited and condemned to the use of the United States of America; that the plaintiff be awarded its costs and disbursements in this action and for such other and further relief as this Court deems just and proper.

Dated: Brooklyn, New York
      October __, 2013

                                   LORETTA E. LYNCH
                                   United States Attorney
                                   Eastern District of New York
                                   Attorney for Plaintiff
                                   271 Cadman Plaza East, 7th Floor
                                   Brooklyn, New York 11201

                By:         _____
                                   William J. Gullotta
                                   Assistant United States Attorney
                                   (718) 254-6148

## VERIFICATION

1. I am a Special Agent with Immigration and Customs Enforcement, United States Department of Homeland Security (AICE@), and as such, have knowledge of the facts underlying this action.

2. I have read the within verified complaint <u>in rem</u> and know the contents thereof.

3. The matters contained in the within verified complaint <u>in rem</u> are true and accurate to the best of my knowledge, information and belief.

4. The source of my information and the grounds for my belief are my personal knowledge, information provided by other law enforcement officers, and the official files and records of ICE and other federal agencies.

I, declare under penalty of perjury that the foregoing is true, to the best of my knowledge, information, and belief.

Dated: October _8_, 2013

_____
Graham Klein
Special Agent
Immigration and Customs Enforcement
U.S. Department of Homeland Security