UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------
UNITED STATES OF AMERICA,

– against –

FOUR HUNDRED SEVENTEEN THOUSAND, ONE HUNDRED FORTY-THREE DOLLARS AND FORTY-EIGHT CENTS ($417,143.48), *more or less, in United States currency seized from J.P. Morgan Chase Bank Account number 4462287420 held in the names of Amelia de Carmen Dominguez and Gustavo Juila, and all proceeds traceable thereto* and FIVE HUNDRED SIXTY-EIGHT DOLLARS AND SEVENTY-ONE CENTS ($568.71)*, more or less, in United States currency seized from J.P. Morgan Chase Account number 4462287933 held in the name of GG Gold, Inc. and all proceeds traceable thereto*,

Defendants *in rem*.
---------------------------------------------------------------

**MEMORANDUM & ORDER**
13-CV-5567 (MKB)

MARGO K. BRODIE, United States District Judge:

On October 8, 2013, the United States commenced the above-captioned civil action *in rem* against funds held in two accounts at J.P. Morgan Chase Bank, totaling $471,143.48 and $568.71 respectively, and all proceeds traceable thereto. The action seeks forfeiture of the Defendant funds pursuant to: (i) 21 U.S.C. § 881(a)(6), as monies furnished or intended to be furnished in exchange for a controlled substance, proceeds traceable to such an exchange or monies used or intended to be used to facilitate a violation of the Controlled Substances Act, and (ii) 18 U.S.C. § 981(a)(1)(A), as property involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1956(a)(2)(A). The funds are held in the names of Gustavo Adolfo Julia Noceti ("Gustavo Julia") and Amelia de Carmen Dominguez ("Dominguez"), both of whom

filed an unverified Notice of Claim on April 25, 2015 and now contest the forfeiture.

The government has moved to strike the Notice of Claim as procedurally defective, Dominguez has sought leave to amend the Notice of Claim, to include her signature under penalty of perjury, *nunc pro tunc*, and Gustavo Julia has moved to dismiss the Complaint.  For the reasons set forth below, because Gustavo Julia and Dominguez do not have statutory standing to pursue their claims, the government's motion to strike is granted, Dominguez's motion to amend *nunc pro tunc* is denied as futile, and the motion to dismiss is denied.

## I. Background

### a. Factual background

#### i. The seized accounts

The seized funds come from two separate accounts.  Gustavo Julia and Dominguez (collectively, "Claimants") are named holders of the account containing $417,143.48 (the "personal account").  The second account, containing $568.21, is held in the name of GG Gold, Inc., a business of Gustavo Julia's (the "GG Gold account").  Gustavo Julia is a signatory on the GG Gold Account.  (Compl. ¶ 28; *see also* Notice of Claim 1–2.)  On or about January 18, 2011, law enforcement officials executed seizure warrants against both accounts.  (Compl. ¶ 41.)  The warrants were obtained based on allegations that funds from the GG Gold account were used to lease a jet containing cocaine, and that additional funds in the GG Gold account were later transferred to Claimants' personal account.

#### ii. The account transactions and the jet

In late 2010, Gustavo Julia and his brother Eduardo Antonio Julia Noceti ("Eduardo Julia") leased a jet bearing tail number N600AM ("N600AM") from a company located in Fort Lauderdale, Florida, and paid for that lease through a third-party company with funds from the

GG Gold account. (Compl. ¶¶ 18–22, 28–32.) Eduardo Julia took a pilot training course in Arizona, and Gustavo Julia paid for that course via a company called Southern Valley Trading Limited ("Southern Valley").[1] (*Id.* ¶¶ 25–26.)

On December 30, 2010, N600AM departed from the airport in Maron, Argentina and traveled to Bueno Aires, Argentina, where it remained for approximately two days before departing for Cape Verde and ultimately landing in Barcelona, Spain. (*Id.* ¶¶ 16–17.) On January 2, 2011, Spanish authorities detained N600AM at Barcelona International Airport, and shortly thereafter discovered 944 kilograms of cocaine on board.[2] (*Id.* ¶¶ 13, 17.) Also on board were Eduardo Julia, Gustavo Julia, and Gaston Matias Miret. (*Id.* ¶ 13.) The three men, all citizens of Argentina, were arrested. (*Id.*) Eduardo and Gustavo Julia were sentenced to terms of imprisonment. (*Id.*)

Following his arrest, Gustavo Julia instructed Dominguez to transfer all money remaining in the GG Gold account to Argentina. (*Id.* ¶ 36.) On January 5, 2011, $409,000 was wire-transferred from the GG Gold account to an investment and financial advisory firm in South America. (*Id.*) The wire was rejected and the funds were returned to the GG Gold account. (*Id.*) On or about January 11, 2011, $409,000 was transferred from the GG Gold account to Claimants' personal account. (*Id.* ¶¶ 34, 37.)

b. **Procedural background**

On January 18, 2011, then-Magistrate Judge Andrew L. Carter, Jr. found that probable cause existed to believe that the Defendant funds were subject to forfeiture, and issued seizure

---

[1] Southern Valley also wire-transferred money to Claimants' personal account in late 2010. (Compl. ¶ 34.)

[2] The government alleges that N600AM was used "solely by Gustavo and Eduardo to transport large quantities of cocaine internationally." (Compl. ¶ 21.)

3

warrants for all funds on deposit in the GG Gold account and personal account, pursuant to 21 U.S.C. § 881(b) and 18 U.S.C. § 981(b).  (Compl. ¶ 40.)  Law enforcement officers executed the seizure warrants.  (*Id.* ¶ 41.)  Through an administrative process, United States Customs and Border Protection ("CBP") has issued three decisions finding that the Defendant funds facilitated illegal activity or are the proceeds of a crime, including a December 14, 2011 decision that the funds were the proceeds of criminal money laundering, a July 30, 2012 decision finding the same, and an August 28, 2012 denial of Dominguez's request for reconsideration.  (*See* Exs. A–C, annexed to Notice of Claim, Docket Entry No. 6.)

On October 8, 2013, the government filed this Complaint seeking condemnation and forfeiture of the Defendant funds in accordance with 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 984, alleging that the Defendant funds were derived from monies furnished or intended to be furnished in exchange for a controlled substance, (Compl. ¶¶ 43, 45), and in accordance with 18 U.S.C. § 891(a)(1)(A) and 18 U.S.C. § 984, because the funds constitute or derived from property involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1956(a)(2)(A), (Compl. ¶¶ 47, 49).  The government asserts that on October 9, 2013, it served a copy of the Complaint on Claimants' attorney Robert Feitel, Esq, via email.  (Aff. of Tanya Y. Hill ("Hill Aff.") ¶ 5, annexed to Gov. Mem. in Support of Mot. to Strike[3] ("Mot. to Strike") as Ex. 1, Docket Entry No. 14.)  On October 22, 2013, this Court issued a warrant for the arrest of the articles *in rem*.  (Docket Entry No. 3.)  On December 24, 2013, the Complaint and Warrant were sent to Mr. Feitel via Federal Express, along with a notice that indicated the deadlines for

---

[3] Neither the government nor Claimants filed their motions in compliance with Rule 7.1(a) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Civil Rules"), requiring a notice of motion separate from the memorandum of law in support thereof.  *See* Local Civil Rules 7.1(a), *available at* http://www.nysd.uscourts.gov/rules/rules.pdf.

4

filing a claim and answer and the name of the government attorney to be served with any claim or answer. (Hill Aff. ¶ 6; Letter dated March 17, 2014 at 1, annexed to Hill Aff. as Ex. A.)

Beginning February 26, 2014 and continuing through March 27, 2014, a notice of civil forfeiture of the Defendant funds was posted on an official government website, www.forfeiture.gov, for thirty consecutive days. (Docket Entry No. 5.)

On or about February 27, 2014, Robert Spelke, Esq. contacted the United States Attorney's office and indicated that he would be assisting with Dominguez's case. (Hill Aff. ¶ 7.) On or about March 17, 2014, the government sent a letter to Mr. Feitel, copying Mr. Spelke, which indicated that no claim or answer had been served, that the time to do so had expired, and that the government intended to move for default judgment. (Letter dated March 17, 2014 at 1–3.) On or about March 21, 2014, a substantially similar letter was sent to Mr. Feitel at a different address. (Letter dated March 20, 2014, annexed to Hill Aff. as Ex. B.) On March 25, 2014, Sandi Rhee, Esq. filed a motion to appear *pro hac vice* on behalf of Gustavo Julia. (Docket Entry No. 4.)

Claimants filed an unverified Notice of Claim on April 25, 2014, alleging that both Gustavo Julia and Dominguez were owners of the personal account and that Gustavo Julia, as president of GG Gold, was owner of the GG Gold account. (Notice of Claim 1–3, Docket Entry No. 6.) The Notice of Claim refers to both Dominguez and Gustavo Julia as "Claimants," and was signed only by Ms. Rhee, who had appeared only on behalf of Gustavo Julia. (*Id.* at 2–3.) On October 2, 2014, the government sent a letter to Ms. Rhee indicating that the Notice of Claim did not comply with all the requirements of Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Forfeiture Rules"), outlining the procedure for filing an answer or motion, and stating that if no answer or motion was filed by October 16,

2014, the government would move for default judgment. (Letter dated Oct. 2, 2014, annexed to Hill Aff. as Ex. C.) Sometime in October of 2014, an attorney from the government had a telephone conversation with Ms. Rhee in which it informed her of Claimants' need to perfect their claim. (Mot. for Leave to File Verified Statement of Claim *Nunc Pro Tunc* ("Mot. to Amend") 2 n.1, Docket Entry No. 12.)

On or about October 29, 2014, Assistant United States Attorney ("AUSA") Tanya Y. Hill had a telephone conversation with Mr. Feitel and Ms. Rhee "wherein they discussed the theory of their motion to dismiss the complaint." (Hill Aff. ¶ 9.) On October 30, 2014, Claimants served a "draft" motion to dismiss the Complaint on the United States. (*See* Mot. to Amend 2, Docket Entry No. 12.) On December 3, 2014, the government submitted a letter to this Court seeking the Court's entry of a default judgment against the Defendant funds. (Docket Entry No. 8.) The government also opposed Claimants' prospective motion to dismiss on the grounds that Claimants lacked standing to file the motion because their Notice of Claim was defective. (*Id.* at 2–3.) On December 15, 2014, counsel for Claimants[4] submitted a letter seeking leave to file a motion to dismiss the action pursuant to Federal Rule of Civil Procedure 12(b) and Rule G(2)(f) of the Forfeiture Rules for failure to state a claim on which relief can be granted. (Docket Entry No. 9.)

On January 16, 2015, Dominguez sought leave to amend her Notice of Claim *nunc pro tunc* to April 24, 2014. (*See* Mot. to Amend; Proposed Order, annexed as Ex. 3 to Mot. to Amend.) Dominguez annexed a signed statement of claim to the motion, declaring under penalty of perjury that she is a joint owner of the personal account and had been authorized to engage in transactions with the GG Gold account. (Docket Entry No. 12-1.) On February 3, 2015, the

---

[4] Counsel did not indicate on behalf of which of the Claimants — Gustavo Julia, Dominguez or both — she filed the letter.

6

Court held a pre-motion conference and established a motion schedule for the government's motion to strike Claimants' Notice of Claim.  On March 20, 2015, the government moved to strike the claim on the grounds that Claimants failed to comply with Rule G(5) of the Forfeiture Rules.  (*See generally* Mot. to Strike.)  On the same day, Gustavo Julia[5] filed a motion to dismiss the Complaint and return his assets.  (Julia Mem. in Support of Mot. to Dismiss ("Mot. to Dismiss") 2, Docket Entry No. 18.)

## II. Discussion

### a. Legal framework

*In rem* forfeiture actions, including civil forfeiture claims, "are governed by Rule G of the Forfeiture Rules and the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), Pub. L. No. 106–185,114 Stat. 202."  *United States v. Vazquez-Alvarez*, 760 F.3d 193, 197 (2d Cir. 2014) (footnote omitted); *see also* 18 U.S.C. § 981(b)(2); 21 U.S.C. § 881(b); Forfeiture R. G(1); *United States v. All Funds on Deposit at Citigroup Smith Barney Account No. 600-00338*, 617 F. Supp. 2d 103, 108 n.1 (E.D.N.Y. 2007) (citing Forfeiture R. A(1)(B)).  The Federal Rules of Civil Procedure also apply to such proceedings to the extent that they do not conflict with the Forfeiture Rules.  Forfeiture R. A(2); *United States v. $138,381.00 in U.S. Currency*, 240 F. Supp. 2d 220, 227 (E.D.N.Y. 2003), *report and recommendation adopted*, 240 F. Supp. 2d 220–223.

---

[5] The motion specifically states that "Gustavo Julia (owner of the funds) now moves this Court pursuant to Federal Rule of Civil Procedure 12(b) and the Supplemental Rules to dismiss this action and order the return of his assets" and seeks return of the funds to the "Claimant." (Mot. to Dismiss 2, 15.)  While Gustavo Julia and Dominguez share the same counsel, Dominguez does not appear to join the motion to dismiss.  However, in its opposition to the motion to dismiss, the government assumes that Dominguez is the "Claimant" to which the motion refers, despite the moving documents stating otherwise.  (Gov. Opp'n to Mot to Dismiss 2, Docket Entry No. 19.)  Neither Gustavo Julia nor Dominguez replied to the government's opposition.

Pursuant to the Forfeiture Rules, a person asserting an interest in a defendant *in rem* must file a claim in the court where the civil action is pending in compliance with Forfeiture Rule G(5)(a). *Vazquez-Alvarez*, 760 F.3d at 197. Within twenty-one days of filing the claim, the claimant must file an answer to the complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. Forfeiture R. G(5)(b). At any time before trial, the government may move to strike a claim pursuant to Forfeiture Rule G(8)(c) on the grounds that the claimant lacks standing to make the claim, or on the grounds that the claimant did not comply with Forfeiture Rule G(5) or G(6).[6] Forfeiture R. G(8)(C)(i)(A)–(B); *see also Vasquez-Alvarez*, 760 F.3d at 197 ("The government may then move to strike the claim on the ground that the 'claimant lacks standing.'"). Because a district court may not consider a motion to dismiss if the claimant has not shown standing, a motion to strike must be decided before any motion to dismiss the action. Forfeiture R. G(8)(C)(ii)(A); *see Vazquez-Alvarez*, 760 F.3d at 197 ("If the government does move to strike a claim, that motion to strike 'must be decided before any motion by the claimant to dismiss the action.'"); *United States v. $421,090.00 in U.S. Currency*, No. 11-CV-00341, 2011 WL 3235632, at *2 (E.D.N.Y. July 27, 2011) ("However, '[b]efore a claimant can contest a forfeiture, he must demonstrate standing.'" (alteration in original) (quoting *Mercado v. U.S. Customs Serv.*, 873 F.2d 641, 644 (2d Cir. 1989))).

      b.    **Motion to file amended claim and cross-motion to strike**

A motion to strike for lack of standing may be presented as a motion for judgment on the pleadings, a motion to determine after a hearing, or a motion for summary judgment. Forfeiture R. G(8)(c)(ii)(B). The claimant bears the burden of establishing standing by a preponderance of the evidence. *Id.* The government is not clear as to which type of motion it is making, but as the

---

[6] Forfeiture Rule G(6) outlines procedures for the service of special interrogatories.

8

Court has little information beyond the pleadings in this action, no discovery has been presented to the Court and neither party has requested a hearing, the Court will construe the government's motion to strike the claim for lack of standing as a motion pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. In reviewing a Rule 12(c) motion for judgment on the pleadings, the Court must "accept[] the complaint's factual allegations as true and draw[] all reasonable inferences in the plaintiff's favor." *Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012).

"In order to contest a governmental forfeiture action, claimants must have both standing under the statute or statutes governing their claims and standing under Article III of the Constitution as required for any action brought in federal court." *Vazquez-Alvarez*, 760 F.3d at 197 (quoting *United States v. Cambio Exacto, S.A.*, 166 F.3d 522, 526 (2d Cir. 1999)); *United States v. Technodyne LLC*, 753 F.3d 368, 380 (2d Cir. 2014) (same); *United States v. 509 Raspberry Patch Drive*, --- F. Supp. 3d ---, 2015 WL 4590788, at *2 (W.D.N.Y. July 29, 2015) (same).[7] Claimants have statutory standing to oppose forfeiture in a civil *in rem* proceeding if they "claim[ ] an interest in the seized property[,] . . . asserting [that] interest in the property in the manner set forth in the [Forfeiture] Rules . . . ." *Technodyne*, 753 F.2d at 380 (alteration in original) (quoting 18 U.S.C. § 983(a)(4)(A)). A claimant who fails to comply with the procedural requirements of Forfeiture Rule G(5) may lose statutory standing. *509 Raspberry Patch Drive*, --- F. Supp. 3d at ---, 2015 WL 4590788, at *2 (collecting cases); *see also Cambio Exacto*, 166 F.3d at 526 (filing a verified claim within time limits set by Forfeiture Rule C(6),

---

[7] The government does not appear to contest Claimants' Article III standing in this action, although the extent of Dominguez's interest in the GG Gold account is unclear. *Cf. United States v. Technodyne LLC*, 753 F.3d 368, 380 (2d Cir. 2014) (finding statutory standing when bank accounts containing *res* were held in the names of claimants); *United States v. All Funds on Deposit at Citigroup Smith Barney Account No. 600-00338*, 617 F. Supp. 2d 103, 118–19 (E.D.N.Y. 2007) (directing parties to conduct discovery on issue of whether wife of account holder had Article III standing when she only claimed she had "involvement with" and "directed activity in" one of the accounts).

9

unless granted an extension, was a prerequisite to statutory standing).

While courts have the discretion to excuse some procedural failures, courts generally "expect claimants to adhere strictly to th[e] requirements [of Forfeiture Rule G(5)]." *United States v. $27,601.00 U.S. Currency*, 800 F. Supp. 2d 465, 467 (W.D.N.Y. 2011) (quoting *United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*, 664 F. Supp. 2d 97, 101–02 (D.D.C. 2009) and citing *United States v. Amiel*, 995 F.2d 367, 371 (2d Cir. 1993) ("Strict compliance with [the time deadline for an answer] is typically required.")) (granting motion to strike claim when claimant failed to file an answer to the complaint or demonstrate excusable neglect for failing to do so); *see also United States v. $39,557.00, More or Less, in U.S. Currency*, 683 F. Supp. 2d 335, 338–39 (D.N.J. 2010) (striking claim for failure to identify ownership and failure to comply with verification requirement). The rule states:

> A person who asserts an interest in the defendant property may contest the forfeiture by filing a claim in the court where the action is pending. The claim must: (A) identify the specific property claimed (B) identify the claimant and state the claimant's interest in the property; (C) be signed by the claimant under penalty of perjury; and (D) be served on the government attorney designated under Rule G(4)(a)(ii)(C) or (b)(ii)(D).

Forfeiture R. G(5)(a)(i).[8] It also sets forth strict timing requirements for the filing of a claim, "[u]nless the court for good cause sets a different time . . . ." *Id.* G(5)(a)(ii); *see also United States v. Khan*, 497 F.3d 204, 207 (2d Cir. 2007) (noting that the district court has the authority to extend the period for filing verified claims). While the Second Circuit has not directly addressed the issue, "the Third Circuit has identified compliance with Supplemental Rule

---

[8] Prior to the Amendment of the Forfeiture Rules in December, 2006, parts of Rule G, including Rule G(5), were codified at Rule C(6). *See United States v. 17 Coon Creek Rd.*, 787 F.3d 968, 972-73 (9th Cir. 2015); *United States v. 509 Raspberry Patch Drive*, --- F. Supp. 3d ---, 2015 WL 4590788, at *3 (W.D.N.Y. July 29, 2015); *United States v. 479 Tamarind Drive*, No. 98-CV-2279, 2011 WL 1045095, at *2 n.1 (S.D.N.Y. Mar. 11, 2011). To the extent the current Rule G does not address an issue, Rules C and E of the Forfeiture Rules also apply. Forfeiture R. G(1).

G(5)(a), that the claimant must file a verified statement of interest, as 'the most significant requirement.'" *$39,557.00*, 683 F. Supp. 2d at 339 (quoting *United States v. $487,825.000 in U.S. Currency*, 484 F.3d 662, 664 (3d Cir. 2007)); *cf. Mercado*, 873 F.2d at 645 ("Claims in *in rem* forfeiture proceedings usually involve substantial sums of money and lend themselves readily to the filing of false claims. Where, as here, the claimant is available to verify his own claim, he should not be permitted to rely upon a hearsay and conclusory verification by his lawyer.").

### i. Gustavo Julia's claim

The government moves to strike Gustavo Julia's claim[9] as untimely and procedurally defective. (Mot. to Strike 2.) The government argues that his claim was filed three months after the claims deadline expired on January 27, 2014, and is invalid because it was not signed by Gustavo Julia under penalty of perjury. (*Id.* at 2–4, 7–9.) Gustavo Julia did not file an opposition to the motion to strike, and later filed a motion to dismiss, and, as discussed below, Dominguez's opposition raises no argument as to Gustavo Julia's claim.

Pursuant to Rule G of the Forfeiture Rules, the government is required to send direct notice of the action, including a copy of the complaint, "to any person who reasonably appears to be a potential claimant on the facts known to the government," which must include information about the deadline for filing a claim and answer in the action, and the name of the government attorney to be served with the claim and answer. Forfeiture R. G(4)(b). Notice may be provided to an attorney representing the potential claimant, *id.* at G(4)(b)(iii), and via email, *id.* at G(4)(b)(iv). If direct notice is served, a claimant must file a claim within the time set in the notice, at least thirty-five days from the issuance thereof. *Id.* at G(4)(b), G(5)(a)(ii)(A). If

---

[9] While the claims were filed as one document, the Court addresses Claimants' claims separately.

11

notice was published on an official internet government forfeiture site but not sent directly to the claimant or claimant's attorney, a claimant must file his claim no later than sixty days after the first day of publication on the internet site. *Id.* at G(5)(a)(ii)(B). An answer or Rule 12 motion must be served and filed within twenty-one days after filing the claim. *Id.* at G(5)(b).

The government contends that, as directed in the October 22, 2014 Warrant, the Complaint and Warrant were served on Gustavo Julia through Mr. Feitel on December 24, 2013, as required by Forfeiture Rule G(4)(b). (Mot. to Strike 3; Hill Aff. ¶ 6). Claimants do not contest this assertion. Gustavo Julia then had thirty-five days to file his notice of claim with the Court. (Docket Entry No. 3 at 2–3); *see also* Forfeiture R. G(4)(b)(ii). The Notice of Claim was filed on April 25, 2014, far outside this time period, and was filed late without leave of the Court or explanation. *See United States v. $541,395.06 U.S. Currency*, No. 10-CV-6555, 2012 WL 3614294, at *5 (W.D.N.Y. Aug. 21, 2012) (finding that claimant lacked statutory standing when he failed to provide the Court with an explanation for late filing); *United States v. $230,963.88 in U.S. Currency*, No. 00-CV-378-B, 2000 WL 1745130, at *4 (D.N.H. Nov. 16, 2000) (applying Fed. R. Civ. P. 6(b) to claimant's failure to timely file a verified claim and answer, finding "failure to abide by the clear, unambiguous filing deadlines of which he had actual notice does not constitute excusable neglect" (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs.*, 507 U.S. 380, 387–88 (1993))); *United States v. Contents of Account No. 901121707*, 36 F. Supp. 2d 614, 617–18 (S.D.N.Y. 1999) (applying Fed. R. Civ. P. 6(b) "excusable neglect" standard to untimely claim, noting that attorney's ignorance was not excusable neglect). However, even if the Court were to accept the Notice of Claim as timely since it was filed within sixty days of publication on an official government internet site, *see* Forfeiture R. G(5)(a)(ii)(B), the Court would nevertheless strike the Notice of Claim since it was not signed under penalty of perjury in

accordance with the Forfeiture Rules.

The Notice of Claim was not signed under penalty of perjury in compliance with Forfeiture Rule G(5)(a)(C), and despite repeated notice to counsel by the government of that failure, the defect was never corrected and Gustavo Julia has failed to offer any explanation for the defect. *See United States v. Real Property Located at 1 Mile Up Hennessey Road*, No. 09-CV-1940, 2010 WL 456922, at *3 (E.D. Cal. Feb. 3, 2010) (granting unopposed motion to strike claim and answer because claim was not signed under penalty of perjury and claimant was missing, noting it was unlikely claim would be verified and no good cause excused failure to do so in the first instance). Counsel has been aware of these defects for at least nine months, and Gustavo Julia has made no application to the Court to forgive those procedural errors, apparently choosing instead to rely on his motion to dismiss, a motion that this Court cannot decide unless it finds that Gustavo Julia has standing to contest the forfeiture. As he has failed to comply with the Forfeiture Rules, offered no excuse or reason for his failure, and made no attempt to correct the defects, Gustavo Julia's claim is struck. *See $487,825.000 in U.S. Currency*, 484 F.3d at 664–65 (striking claim because the claimant never filed a properly verified statement); *$27,601.00 U.S. Currency*, 800 F. Supp. 2d at 467 (collecting cases, noting that "[w]here a claimant fails to comply with the procedural requirements of the Supplemental Rules, his claim may be stricken for lack of statutory standing"); *$39,557.00*, 683 F. Supp. 2d at 338 ("To establish statutory standing in a forfeiture action, a potential claimant must comply with both the statutory and procedural requirements delineated in 18 U.S.C. § 983(a)(4)(A) and the corresponding [Forfeiture Rules], specifically Rules G(5)(a)(i)(B) & (C).").

    ii.   **Dominguez's claim**

Dominguez argues that she should be given leave to amend the Notice of Claim to add a

13

statement of her claim signed under penalty of perjury, arguing that the government had notice of her claim since the Defendant funds were initially seized, the Court has been aware of her claim since April 25, 2014, and Dominguez was not acting in bad faith. (Mot. to Amend 3–4.) The government argues that Dominguez's application should be treated as a motion to file her claim out of time, and denied because she has proffered no reason for the delay except her counsel's inability to read the rules. (Mot. to Strike 9–13.)

In certain circumstances, a court may exercise its discretion to permit a claimant to correct procedural defects in its claim. *Amiel*, 995 F.2d at 371 ("[A] court has discretion in appropriate circumstances to depart from the strict compliance standard" encompassed in the Forfeiture Rules.); *United States v. 4492 Livonia Rd.*, 889 F.2d 1258, 1262 (2d Cir. 1989) ("When, as here, a claimant has made a sufficient showing of interest in the property through filing with the court a motion and accompanying affidavits, technical noncompliance with the procedural rules governing the filing of claims may be excused."); *see also Citigroup Smith Barney Account No. 600-00338*, 617 F. Supp. 2d at 114 ("[A]mendments should be liberally permitted to add verifications to claims originally lacking them." (quoting *United States v. 1982 Yukon Delta Houseboat*, 774 F.2d 1432, 1436 (9th Cir. 1985))). "As with other pleadings, the court should strike a claim or answer [for failure to comply with Forfeiture Rule G(5) or G(6)] only if satisfied that an opportunity should not be afforded to cure the defects under Rule 15." Forfeiture R. G(c)(i)(A) advisory committee's note to 2006 adoption. Rule 15 provides that "[t]he court should freely give leave when justice so requires," and courts in this circuit have construed that directive "liberally." *United States v. One Hundred & Three Thousand Seven Hundred & Ten Dollars & No Cents*, No. 13-CV-4995, 2015 WL 758460, at \*4 (E.D.N.Y. Feb. 19, 2015).

"[I]n considering whether to grant a motion to amend, the court should consider a number of factors, 'including undue delay, bad faith, undue prejudice to the opposing party, or futility,' or whether the amendment is 'unlikely to be productive.'" *Id.* (citations omitted); *Linkov v. Golding*, No. 12-CV-2722, 2014 WL 1399414, at *1 (E.D.N.Y. Apr. 10, 2014) (outlining reasons to deny leave to amend, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." (quoting *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008))); *see also In re 650 Fifth Ave. & Related Properties*, 581 F. App'x 61, 63 (2d Cir. 2014) ("[A] motion for leave to amend a complaint may be denied when amendment would be futile." (alteration in original) (quoting *Tocker v. Philip Morris Cos.*, 470 F.3d 481, 491 (2d Cir. 2006))); *E.E.O.C. v. Morgan Stanley & Co.*, 211 F.R.D. 225, 227 (S.D.N.Y 2002) ("The Court may also deny leave to amend where there has been a delay and 'no satisfactory explanation is offered for the delay . . . .'" (alteration in original) (quoting *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990))). Additionally, Courts have looked to whether the purposes of the Forfeiture Rules would be frustrated by an amendment, as well as a host of other factors which would elucidate whether it would be proper to permit amendment. *United States v. $125,938.62*, 370 F.3d 1325, 1329 (11th Cir. 2004) (outlining factors to consider as applied in Eleventh Circuit); *$138,381.00 in U.S. Currency*, 240 F. Supp. at 230 (outlining discretionary factors); *see also $487,825.00 in U.S. Currency*, 484 F.3d at 664–65 (noting that the purposes of rules requiring timely verified claim are (1) encouraging quick resolution of the dispute and (2) minimizing the danger of false claims).

In the case of an untimely claim, courts generally permit a party to file a belated claim if the party demonstrates excusable neglect for failure to timely file, in line with the standards set forth in Rule 6(b)(1)(B) of the Federal Rules of Civil Procedure. *See United States v. $1,084,170.78*, No. 14-CV-1537, 2015 WL 3500201, *2–3 (N.D.N.Y. May 5, 2015) (outlining factors to excuse failure to file notice of claim); *United States v. $541,395.06 U.S. Currency*, No. 10-CV-6555, 2012 WL 3614294, at *3–5 (W.D.N.Y. Aug. 21, 2012) (outlining factors to excuse a late filing); *United States v. $6826 in U.S. Currency*, No. 09-CV-279, 2010 WL 4053602, at *2 (D. Vt. Oct. 14, 2010) (applying excusable neglect standard to claimant's motion to file answer *nunc pro tunc* after failing to timely file); *Contents of Account No. 901121707*, 36 F. Supp. 2d at 616–17 (same); *see also* Forfeiture R. G(5)(a) advisory committee's note to 2006 adoption ("Excusable inability of counsel to obtain an appropriate signature may be grounds for an extension of time to file the claim."). In so evaluating, courts look to, *inter alia*, when the claimant became aware of the seizure, the reasons proffered for any delay, whether the government was aware of the claimant's interest, and any prejudice to the government. *Contents of Account No. 901121707*, 36 F. Supp. 2d at 617; *see also In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 129 (2d Cir. 2011) (setting forth factors to be considered in evaluating excusable neglect).

It is not clear that counsel's failure to read the clear language of Forfeiture Rule G forgives Dominguez's failure to file a claim in compliance with those rules, especially given the clarity of the rules and the fact that the rules were clearly outlined in the Warrant. However, reviewing her motion under the liberal amendment standard of Rule 15(a)(2) of the Federal Rules of Civil Procedure, Dominguez's motion fails because, even though the government may have been on notice of her potential claim and there is no immediate prejudice to the

16

government, there is no indication that Dominguez has been pursuing her rights diligently in this action, and leave to amend her claim would be futile.

Even if the Court were to grant her leave to file the amended verification *nunc pro tunc* to April 25, 2014,[10] Dominguez would not have statutory standing to continue pursuing her claim, as she has not filed an answer or a motion to dismiss, has not sought leave for an extension of time to do so in the year and four months since her claim was filed, and has not set forth any facts that would demonstrate excusable neglect for failing to timely answer the Complaint. *See Amiel*, 995 F.2d at 371 (strict compliance with Forfeiture Rule C(6), mandating timely verified answer, required to establish standing); *United States v. 479 Tamarind Drive*, No. 98-CV-2279, 2011 WL 1045095, at *3 (S.D.N.Y. Mar. 11, 2011) ("When a claimant fails to file an answer, he or she does not have statutory standing to bring a claim."); *$27,601.00 U.S. Currency*, 800 F. Supp. 2d at 467 (striking complaint for lack of statutory standing when claimant failed to file answer or demonstrate excusable neglect for failing to do so two years after filing claim); *$6826 in U.S. Currency*, 2010 WL 4053602, at *2 (granting motion for entry of order of forfeiture, denying motion for reconsideration of court order striking claim and denying request to file an answer *nunc pro tunc* as claimant failed to demonstrate that his failure to file an answer amounted to excusable neglect); *$138,381.00 in U.S. Currency*, 240 F. Supp. 2d at 229–31 (report and recommendation finding that claimant's wife had no statutory standing to contest forfeiture in part because she did not properly join her husband's claim, did not file a verified claim, and did not file an answer); *see also United States v. $7823.00 U.S. Currency*, No. 11-CV-00759, 2012 WL 664830, at *1–2 (M.D. Tenn. Feb. 29, 2012) (striking claim when answer was

---

[10] As discussed above, if the December 2013 service of the Complaint and Warrant on Mr. Feitel constituted notice to Dominguez as well as Gustavo Julia, a claim dated April 25, 2014 would not be timely, and Dominguez has not requested that the Court forgive its untimeliness.

17

four months past due, claimant was notified of obligation to file an answer and was made aware of procedural requirements, and claimant failed to oppose motion); *United States v. $11,320.00 in U.S. Currency*, 880 F. Supp. 2d 1310, 1324 (N.D. Ga. 2012) (striking claim that was not filed under penalty of perjury when claimant failed to file an answer or Rule 12 motion in compliance with the rules and claimant produced no evidence of a colorable ownership interest in the defendant currency).  Therefore, Dominguez's motion to amend the Notice of Claim is denied, as amendment would be futile, and her claim is struck for failure to comply with Forfeiture Rule G(5).

      c.  **Motion to dismiss**

          i.  **Standard of review**

In evaluating a motion to dismiss in a civil forfeiture action, a court must consider the general standard of review that governs a motion to dismiss under Rule 12(b) and the pleading requirements set forth in Forfeiture Rule G(2).  *See* Forfeiture R. G(8)(b)(i) (noting motion to dismiss the action may be brought pursuant to Rule 12); *In re 650 Fifth Ave. & Related Properties*, 777 F. Supp. 2d 529, 541–42 (S.D.N.Y. 2011) ("When considering a motion to dismiss under Rule 12(b)(6), the Court will 'consider the legal sufficiency of the complaint, taking its factual allegations to be true and drawing all reasonable inferences in the plaintiff's favor.'" (quoting *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009))); *United States v. Contents in Account No. 059-644190-69*, 253 F. Supp. 2d 789, 791 (D. Vt. 2003).  The Complaint must "state sufficient facts to support a reasonable belief that the government will be able to meet its burden of proof at trial."  Forfeiture R. G(2)(f); *see also in re 650 Fifth Ave.*, 777 F. Supp. 2d at 542.

### ii. Gustavo Julia's motion to dismiss is denied

As discussed above, in order to contest a governmental forfeiture action, claimants must have both Article III standing and statutory standing. *Technodyne*, 753 F.3d at 380 (quoting *Cambio Exacto*, 166 F.3d at 526). If a claim is struck for failure to comply with Forfeiture Rule G(5), there is no proper "claim [of] an interest in the seized property," and a putative claimant would no longer have statutory standing to contest the action and could not proceed with a motion to dismiss. *See id.*

Gustavo Julia argues that the Complaint fails to allege sufficient facts to support a forfeiture action, fails to allege a sufficient connection between the Defendant funds and drug trafficking, and fails to sufficiently allege promotional money laundering. As Gustavo Julia's claim has been struck as procedurally defective, he has no statutory standing to bring the motion to dismiss. *See 509 Raspberry Patch Drive*, --- F. Supp. 3d at ---, 2015 WL 4590788, at *2. However, even if his claim were not struck, Gustavo Julia officered no explanation for the extended time between filing his claim and filing the instant motion to dismiss, and the motion was filed far outside the twenty-one-day period required by Forfeiture Rule G(5)(b). *See United States v. $10,160.00 in U.S. Currency*, No. 11-CV-1612, 2012 WL 3608578, at *2 (D. Conn. Aug. 22, 2012) (striking answer that was untimely filed when claimant did not file a motion to extend the deadline). Accordingly, the motion is denied.

### iii. Dominguez has not filed a motion to dismiss or an answer

As discussed above, Dominguez failed to timely file an answer or motion to dismiss in this action. The government responds to Gustavo Julia's motion to dismiss as if Dominguez had filed it, arguing that Gustavo Julia cannot move to dismiss the Complaint because he has no standing to move to dismiss — but does not further dispute Dominguez's standing to move to

19

dismiss the Complaint. (Gov. Reply Mem. in Further Support of Mot. to Strike ("Gov. Reply") 2 n.1.) However, because Dominguez has not filed a motion to dismiss, the Court declines the government's invitation to rule on her hypothetical motion.

### III. Conclusion

For the foregoing reasons, the Court grants the government's motion to strike the Notice of Claim, denies Dominguez's motion to amend the unverified Notice of Claim, and denies Gustavo Julia's motion to dismiss the Complaint.

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated: September 2, 2015
      Brooklyn, New York